IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KAREN RHODES, | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| AA - OK BAIL BONDING CO. OF | ) | |
| GWINNETT, and CHARLES R. SHAW, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Karen Rhodes (hereinafter "Plaintiff"), by and through her undersigned counsel, and files this Complaint for Damages against Defendants AA - OK Bail Bonding Co. of Gwinnett (hereinafter "the Company") and Charles R. Shaw (hereinafter "Shaw") (collectively, "Defendants"), and shows the Court as follows:

## JURISDICTION AND VENUE

1.

Plaintiff brings this action under the Fair Labor Standards Act of 1938, as amended, 29 USC § 201 *et seq.* (hereinafter "FLSA"), to recover unpaid, federally

mandated overtime wages owed to Plaintiff, liquidated damages in an amount equal to unpaid overtime wages, and reasonable attorneys' fees and costs; as well as damages for Defendants' violations of the FLSA anti-retaliatory provisions under Section 15(a)(3) of the FLSA, 29 USC § 215(a)(3).

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 USC §§ 1331 and 1337, and 29 USC § 216(b) of the FLSA and 28 USC § 1343(4).

3.

Defendant AA - OK Bail Bonding Co. of Gwinnett is a Georgia corporation, and the unlawful employment practices described herein occurred at 733-A Buford Drive, Lawrenceville, GA, 30043.  Accordingly, venue is appropriate in this Court, pursuant to 28 U.S.C. § 1391; 29 USC § 216(b); and LR 3, Northern District of Georgia.

**<u>PARTIES</u>**

4.

Plaintiff is a female citizen of the United States of America and a resident of the State of Georgia, and is subject to the jurisdiction of this Court.

5.

Plaintiff was an "employee" of Defendants, as defined under 29 USC § 203(e), and, in any workweek, was engaged in commerce within the definitions of 29 USC §§ 206(a) and 207(a).

6.

During her employment with Defendants, Plaintiff worked an amount of time that was more than forty (40) hours per workweek and was not paid an overtime wage differential, as required by 29 U.S.C. §207.

7.

Plaintiff complained about not receiving overtime wage compensation on April 20, 2010.

8.

Plaintiff was terminated on the same date, April 20, 2010.

9.

Defendant Shaw is the Owner of the Company.  Defendant Shaw was a decision-maker as to Plaintiff's compensation, Plaintiff's job duties, and the termination of Plaintiff's employment.  Defendant Shaw works directly in the interest of the Company and was in a supervisory position over Plaintiff.

10.

Defendant AA - OK Bail Bonding Co. of Gwinnett is a qualified and licensed organization in Georgia that is entitled to do business in Georgia, and is engaged in interstate commerce, with its gross revenues exceeding $500,000 per year.

11.

Defendant AA - OK Bail Bonding Co. of Gwinnett is an "enterprise engaged in commerce or in the production of goods for commerce" within the definition of 29 USC § 203(r) and (s).

12.

Defendant AA - OK Bail Bonding Co. of Gwinnett may be served with process by delivering a copy of the Summons and Complaint to its Registered Agent, Debra Hilyer, AA - OK Bail Bonding Co. of Gwinnett, 5495 Jimmy Carter Blvd., Norcross, GA 30093.

13.

Defendants are "employers" within the definition of 29 USC § 203(d). Defendants are governed by and subject to 29 USC §§ 204 and 207.

## **FACTUAL ALLEGATIONS**

14.

Defendants hired Plaintiff on April 28, 2008.

15.

Plaintiff was employed by the Company as a professional bail agent.

16.

As an employee of the Company, Plaintiff processed bail applications out of the Gwinnet County Jail System.

17.

Plaintiff handled receipt of money from clientele and performed data entry of information from bail applications.  Plaintiff called bonds into the jail, traveled to the jail once the bonds had been processed, signed for the bonds, and returned to work to file bond paperwork.

18.

From the time of hire, Plaintiff was paid at a rate of $13.00 per hour, plus commissions and bonuses.

19.

In or around May 2009, Plaintiff received a raise to $14.00 per hour, which Plaintiff continued to receive until the Company terminated her employment on April 20, 2010.

20.

During Plaintiff's employment with the Defendants, Plaintiff came into work periodically to process additional bonds outside of her regular work schedule.

21.

Plaintiff also provided shift coverage by working other employees' shifts in their absence, outside of her regular work schedule.

22.

Additionally, Defendant Shaw instructed Plaintiff that she needed to work beyond the end of her scheduled shift to provide office coverage, because customers were still coming in for assistance after her shift had ended.  Plaintiff worked to provide this extra coverage.

23.

Despite that Plaintiff worked over forty (40) hours in a workweek on numerous occasions during the course of her employment, Plaintiff was not paid

the overtime wage differential required by 29 U.S.C. §207 on those occasions

Plaintiff worked over forty (40) hours in a workweek.

24.

On April 13, 2010, Plaintiff sent Defendant Shaw an email stating that she

had worked overtime and provided notes detailing her activities.

25.

On the same date, April 13, 2010, Defendant Shaw sent a reply stating: "We

do not direct, require, or authorize any 'employee' overtime at AA OK. Nor are

you scheduled to work any. If you stayed or remained at the office, such was at

your own desire for your own purpose NOT in any way a result of scheduled or

required hours."

26.

On April 20, 2010, Plaintiff sent Defendant Shaw an email with a subject

line reading, "Regarding Overtime Pay," in which Plaintiff stated that she

disagreed with Defendant Shaw's response to her overtime pay inquiry.  Plaintiff

stated that Defendant Shaw had insisted she stay to provide extra coverage due to

customers coming in after the end of her shift.  Plaintiff stated that Defendant

Shaw had previously told Plaintiff she would be paid for her time.  Plaintiff stated

she had not been paid for overtime that she had worked.  Plaintiff asked Defendant

Shaw to do what was right and pay her for the hours she had worked.

27.

On the same date, April 20, 2010, Defendant Shaw sent a reply stating:

"Karen, At NO TIME have I ever required you to work overtime. Moreover, your total gross pay (including all bonuses, loans, gifts, incentives, etc.) would in most cases equate to or been [sic] greater then your alleged/purported 'overtime pay'.. [sic] Simply, do the calculation. I am sorry that you have mis understood [sic] or mis perceived [sic] your wages. Apparently, you must be disillusioned or not being honest. [sic] Frankly, I am becoming perplexed and agitated by your weekly objections to how I run MY COMPANY and whether you are properly compensation, etc. etc. etc. [sic] It is truly frivolous and becoming disruptive. You appear to be using grievance procedures or mis perceived [sic] regulatory remedies provided for in Government regulations to some how manipulate me into paying you monies to not be disruptive and initiate frivolous complaints.. [sic] This borders on a veiled form of extortion…. I AM OVER IT!!  A.A. OK Bail Bonding Company of Gwinnett is my Company and I have the right and preference to manage it as I see fit and determine most appropriate. You came to work here 2.5 years ago with the express understanding that you would be paid exactly what you are being paid and you accepted the job.. [sic] YOU HAVE NO RIGHT TO THIS JOB in the State of Georgia and you were advised of this in the previous debacle of a few weeks ago with N.L.R.B. You work and I pay you what was agreed upon. No right or guarantee of a job at all.. [sic] Should you become dissatisfied with your wage then you certainly can and have the option to seek another job.. [sic] Your weekly tirades, gripes, disruptions, and frivolous complaints will not advance you within the Company or some how [sic] improve your wage. Rather, hard work, productivity, getting along with customers and co workers [sic] will. Again, you have no 'right' to a better wage, shift or the similar."

-8-

28.

On the same date, April 20, 2010, two of Plaintiff's managers, Dale Bolton and Charlie Shaw, came into Plaintiff's office and told her that Defendant Shaw was discharging her.

29.

Plaintiff was not given a reason for discharge at the time of her termination.

## COUNT ONE
## VIOLATION OF THE OVERTIME PROVISIONS
## OF THE FAIR LABOR STANDARDS ACT

30.

During the period from April 2008 until April 2010, Defendants, individually and collectively, willfully employed Plaintiff in the aforesaid enterprise for workweeks longer than forty (40) hours and failed to compensate her for hours worked in excess of forty (40) hours per week at a rate of at least one and one half times the regular rate at which she was employed, contrary to § 7 of the FLSA, 29 USC § 207.

31.

Pursuant to 29 U.S.C. §216, Plaintiff brings this lawsuit to recover the overtime wage differential, liquidated damages in an equal amount, attorneys' fees, the costs of this litigation, and any other damages to which Plaintiff is entitled

-9-

under law.

## COUNT TWO
## VIOLATION OF THE ANTI-RETALIATION PROVISIONS
## OF THE FAIR LABOR STANARDS ACT

### 32.

Defendants, individually and jointly, have violated 29 USC § 215(a)(3) by retaliating against Plaintiff for asserting her rights under the FLSA.

### 33.

Plaintiff complained to Defendant Shaw that she was not being paid overtime wages.

### 34.

Defendants terminated Plaintiff with a retaliatory motive after Plaintiff complained that she was not being compensated properly.

### 35.

In retaliating against Plaintiff for asserting her rights under the FLSA, Defendant has caused Plaintiff pecuniary losses as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## **PRAYER FOR RELIEF**

36.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(A)     Grant Plaintiff a trial by jury as to all Counts in the Complaint;

(B)     Enter judgment awarding Plaintiff unpaid wages pursuant to 29 U.S.C. §§ 206(d) and 207, liquidated damages as provided by 29 U.S.C. §216, pre-judgment interest on unpaid wages pursuant to 29 U.S.C. §216, court costs, expert witness fees, and reasonable attorneys' fees as provided under 29 U.S.C. §216, and all other remedies allowed under the FLSA, including but not limited to punitive damages, should they be permitted;

(C)     Enter judgment awarding Plaintiff lost wages, an equal amount as liquidated damages, compensatory damages, attorneys' fees, costs, and all other remedies allowed under FLSA for Defendants' retaliation against Plaintiff for asserting her rights under the FLSA, including punitive damages should they be permitted;

(D)     Grant declaratory relief to the effect that Defendants have violated Plaintiff's statutory rights; and

(E)    Award Plaintiff such further and additional relief as may be just and

appropriate.

Respectfully submitted the 28th day of March, 2011.

**BARRETT & FARAHANY, LLP**


  /s/ Amanda Farahany
Amanda Farahany
Georgia Bar No. 646135
Michael Cohen
Georgia Bar No. 274813

Attorneys for Karen Rhodes

1100 Peachtree Street, NE
Suite 500
Atlanta, GA 30309
Telephone: (404) 214-0120
Facsimile: (404) 214-0125
Email: Michael@bf-llp.com